UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER BROWN,<br>    *Petitioner*,<br><br>       v.<br><br>ANN COURNOYER, Commissioner of Corrections,<br>    *Respondent*. | No. 3:15-cv-00482 (JAM) |

**RULING DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Christopher Brown has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges a state court murder conviction and sentence to which he stipulated in a plea agreement. The plea agreement specified a sentence of 30 years of imprisonment for his plea of guilty to murder, and it further provided for additional but concurrent terms of imprisonment for other charges he faced including an assault charge for which he had recently been found guilty after trial. Both the murder and the assault charge allegedly involved the same firearm, and they involved incidents that occurred only days apart from one another in 2004.

After a state court judge sentenced petitioner in accordance with the plea agreement to a total effective sentence of 30 years for all the pending charges, petitioner pursued an appeal of the assault conviction, and he eventually won that appeal. But, according to petitioner, he was surprised to learn that—even having won the appeal of his assault conviction—he had no hopes of reducing his total term of imprisonment, because he could not withdraw his guilty plea to the murder charge.

Now in this habeas corpus petition, petitioner contends that his guilty plea to the murder charge was invalid. First, he argues that his counsel misadvised him that he would be able to withdraw his murder plea if he won an appeal of his assault charge. Relatedly, he argues that his murder plea was not knowing and voluntary because of his mistaken belief (regardless of any misadvice by counsel) that he would be able to withdraw his murder plea in the event that he succeeded on his appeal of the assault charge.

Petitioner's claims have already been considered and rejected in the Connecticut state courts. Following an evidentiary hearing, a Connecticut state court judge concluded that petitioner was not misadvised by his counsel and that he would have pleaded guilty to the murder charge even if he had known that he could not withdraw his guilty plea if an appeal of the assault charge were successful. Because it is clear that the Connecticut state courts did not either unreasonably apply federal law or make unreasonable factual determinations in rejecting petitioner's claims, I will deny the petition.

## BACKGROUND

In October 2005, petitioner stood trial in Connecticut state court on charges arising from two separate cases, which had been consolidated for trial. First, he was charged with first-degree assault and carrying a pistol without a permit arising from the non-fatal shooting of his brother. Second, he was charged with the gunshot murder of Jason Cragget. The two incidents occurred just ten days apart, and the state court consolidated the cases for a single trial on the basis of the state's contention that both incidents involved the same gun.

After a lengthy trial, a jury convicted petitioner in November 2005 of assault and unlawful gun possession (the two charges arising from the shooting of his brother) but was

unable to reach a verdict on the murder charge. Two weeks later, petitioner attempted to escape custody and was apprehended and charged with escape.

In December 2005, as part of a "global settlement" of all charges and convictions, petitioner entered an *Alford* plea to the murder charge and pleaded guilty to the escape charge. At his plea hearing, the court canvassed petitioner in an attempt to ensure the plea was being made knowingly and voluntarily. The court asked petitioner numerous questions to confirm his understanding, including the following exchanges:

> THE COURT: Now, by pleading guilty, sir, you are giving up certain rights. Your right to continue to plead not guilty.
> MR. BROWN: Right.
> THE COURT: To have a trial before a judge or a jury, to have an attorney assist you at that trial, present any defenses, confront your accusers, cross examine witnesses, and you're also giving up your right against self-incrimination. Do you understand that, sir?
> MR. BROWN: Yes.
> THE COURT: You've already had a trial on the murder charge. *There's not going to be a retrial, based upon your plea of guilty, do you understand that?*
> MR. BROWN: Yes.

Doc. #11-8 at 3 (emphasis added). The canvass continued:

> THE COURT: Have you understood all my questions, Mr. Brown?
> MR. BROWN: Yes.
> THE COURT: And you want me to accept your pleas of guilty?
> MR. BROWN: Yes. . . .
> THE COURT: You will not be allowed to take your plea back, do you understand that?
> MR. BROWN: Yes.

Doc. #11-8 at 8-9.

3

Consistent with the plea agreement, the court imposed a total effective sentence of 30 years' imprisonment for the murder, assault, gun possession, and escape charges. Specifically, he was sentenced to 30 years for the murder to run concurrent with a five year sentence for first degree assault and a one year sentence for gun possession.

After his sentencing, petitioner appealed his assault and weapons conviction, and he also filed a *pro se* petition for habeas corpus in state court. In 2009, the Connecticut Appellate Court reversed his assault and weapons convictions and remanded for a new trial. *See State v. Brown*, 112 Conn. App. 131 (2009). The Appellate Court concluded in essence that certain incriminating hearsay statements of the assault victim had been admitted at trial against petitioner in violation of his rights under the Confrontation Clause. *Ibid.* The state then dismissed the assault and weapons charges.

Petitioner alleges that he was surprised to learn that he would not be able to withdraw his guilty plea to the murder charge as a result of having won his appeal challenging his assault and weapons convictions. He sought habeas corpus relief in the Connecticut state courts on grounds that his counsel had misadvised him and that his guilty plea was not knowing and voluntary. The state habeas court conducted an evidentiary hearing at which petitioner and his trial attorney, Michael Dolan, testified. Dolan testified that he advised petitioner to accept the plea deal in part because he believed the state's murder case "was going to be much stronger at the second trial." Doc. #11-9 at 20. He believed this because the state announced its intention to conduct DNA testing of a hat that was found at the murder scene, which petitioner had told Dolan he had worn.[1] Dolan further testified that the state informed him of a recorded conversation of petitioner in prison telling his mother that "he had to plead guilty because of this DNA evidence." *Id.* at 22.

---

[1] Dolan testified that the state had not previously sought this testing because he had convinced the prosecutors that the DNA evidence would not be admissible at the first trial. *See* Doc. #11-9 at 21. Respondent's

Dolan also testified that he discussed a possible appeal from the assault and weapons charges with petitioner. He testified that he did not recall these discussions in great detail because the "overriding concern" at the time was "what would happen at the second trial." *Id.* at 31. He told petitioner that he thought the judge's ruling on an evidentiary issue was incorrect and discussed the possibility of pursuing an appeal in general terms. *Id.* at 32-33.  But he also denied ever telling petitioner that a successful appeal of the assault and weapons convictions would allow him to withdraw his guilty plea to the murder. *Id.* at 60-61. The subsequent appeal was handled by a different attorney.

In contrast, petitioner testified that Dolan misadvised him about the effect of his plea. Petitioner stated that he "was assured by Dolan that if the assault comes back [after appeal] that the murder has to come back with it." Doc. #11-9 at 49. He testified that if he had known that he would not be able to withdraw his guilty plea following a successful appeal of the assault and weapons convictions, he "would have never pleaded guilty." *Id.* at 51. In addition, he stated that immediately after he was sentenced he "learned from another inmate that you can never take your plea back," and because he discovered this information he soon afterward filed a habeas petition. *Id.* at 52.[2]

After this evidentiary hearing, Judge Fuger of the Superior Court denied the petition in an oral ruling. He first found that petitioner's plea was voluntary, knowing, and intelligent, and that petitioner would have taken the plea deal even if he believed that his assault conviction might be later reversed on appeal:

---

counsel represented at oral argument that the state did not seek the testing because the judge at the first trial had already instructed the jury that there would be no DNA evidence in the case. The record does not, however, make clear why the state believed DNA evidence from the hat would be inadmissible at the first trial.

[2] The record in this case does not reflect that petitioner filed a habeas corpus petition until November 2006—nearly a year after his plea of guilty to the murder charge—and that habeas corpus petition does not allege any misunderstanding about the effect of a successful appeal on his guilty plea. *See* Doc. #31-1.

> Now, it's clear in this case upon a review of the plea canvass and the testimony provided by Attorney Dolan that the petitioner's plea of guilty to the charge of murder is voluntary and knowing, intelligent and done with sufficient awareness of the relevant circumstances and likely consequences.
>
> The Court, Judge Damiani, engaged in a full canvass of the petitioner to determine the providence of his guilty plea. The petitioner was represented by counsel, and despite his testimony here in the habeas trial, the Court finds that he fully understands, understood, the import of what he was doing. Consequently, this Court will find his guilty plea to the murder charge to be valid. . . .
>
> Now, at the time he entered his guilty plea to this murder conviction, murder charge, it was indeed prudent for the petitioner to agree to the settlement and enter a plea of guilty. . . .
>
> Here, the petitioner accepted the plea offer at a time when he already faced a potential sentence of thirty-five years on the assault case, [in] which he had been convicted but not yet sentenced. By making the pragmatic decision to plead guilty, even if he believed his assault case would later be reversed, the petitioner voluntarily chose to forego his constitutional right to a trial on a murder charge in exchange for what is translated to a limitation upon his total exposure that allowed him to receive a more favorable sentence of not more than thirty years for everything.

*Brown v. Warden*, 2010 WL 6121695, at *1-*2 (Conn. Super. Ct. 2010).

Judge Fuger also concluded that Dolan did not render ineffective assistance of counsel:

> Attorney Dolan's advice to accept the plea offer was indeed prudent and clearly competent. Now, any claim of ineffective assistance of counsel must satisfy both prongs of the test set forth by the Supreme Court [in] *Strickland versus Washington.*
>
> Specifically, the petitioner must first show that counsel's performance was deficient. This requires a showing that counsel made errors so serious [that] counsel was not functioning as the counsel guaranteed the defendant by the 6th Amendment. If and only if the petitioner manages to get over this hurdle, then the petitioner must clear the second obstacle by proving the deficient performance prejudiced the defendant. . . .
>
> Now, there is a disparity in testimony between that of Mr. Dolan and petitioner. The Court credits the testimony of Attorney Dolan

> over the testimony of the petitioner. The petitioner's testimony was self-serving. The petitioner indicated that Mr. Dolan had told him to simply say yes to all of the questions from the judge and plea canvass. It's also crystal clear from the transcript that he did not do so, despite the petitioner's testimony under oath that all he did was say yes to the judge.

*Id.* at *3-*5.

Judge Fuger's ruling was affirmed without written opinion on direct appeal, *Brown v. Commissioner of Correction*, 153 Conn. App. 905, 100 A.3d 61 (2010) (*per curiam*), and denied discretionary review by the Connecticut Supreme Court, *Brown v. Commission of Correction*, 314 Conn. 946 (2014). Petitioner has now filed the instant federal habeas corpus petition contending that he received ineffective assistance of counsel and that his plea was not voluntary, knowing, and intelligent.

## DISCUSSION

Federal courts have very limited authority to overturn state court convictions. A state court defendant who seeks relief by way of a federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 must show that his state court conviction was rendered by means of a very clear violation of federal law—*i.e.*, that the state court's adjudication of his claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); *see also Chrysler v. Guiney*, 806 F.3d 104, 118 (2d Cir. 2015) (reviewing governing standard).

On habeas review pursuant to § 2254, I must therefore apply a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). As the Supreme Court has

7

more recently explained, "[w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct 1372, 1376 (2015) (*per curiam*).

As noted above, petitioner argues in part that he was deprived of his constitutional right to the effective assistance of counsel. A claim for ineffective assistance of counsel is reviewed under the standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner must show both deficient performance—that counsel's conduct "fell below an objective standard of reasonableness" established by "prevailing professional norms"—and also that this deficient performance caused prejudice. *Id.* at 687–88. As to the showing of deficient performance, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy." *Id.* at 689. As to the showing of prejudice in general, there must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

A similar "two-part . . . test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In the plea context, the competence prong "is nothing more than a restatement of the standard of attorney competence" described above. *Id.* By contrast, the prejudice prong in this context "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. In other words, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Id.*; *see also Kovacs v. United States*, 744 F.3d 44, 51-52 (2d Cir. 2014) (discussing various ways how prejudice may be shown in guilty plea context).

All in all, the standard for claims of ineffective assistance of counsel is highly deferential to the choices of counsel. When a state court prisoner seeks federal habeas corpus relief under 28 U.S.C. § 2254(d) for a claim of ineffective assistance of counsel, a federal court's review of that claim becomes "doubly deferential" to the determinations of both counsel and the state courts. *See Woods*, 135 S. Ct. at 1376 (internal quotation marks and citation omitted).

Petitioner also argues that his plea was not voluntary, knowing, and intelligent. "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56. When a defendant "enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id.* Further, the state court's determination that the plea was voluntary, knowing, and intelligent is generally a factual issue entitled to a presumption of correctness on habeas review. *See Perry v. People of the State of New York*, 2016 WL 3248313, at *4 (E.D.N.Y. 2016).

Petitioner does not argue that the habeas court applied incorrect legal standards to either of his claims.[3] Petitioner instead contends that the habeas court made unreasonable factual determinations and unreasonably applied federal law.

---

[3] Even though petitioner's counsel has conceded this issue, it appears that the state court may have overstated the holding of *Hill v. Lockhart* to the extent that it concluded that, in order for petitioner to prevail on his ineffective assistance claim, he would have to prove that but for his counsel's deficient performance "he would have . . . gone to trial and been acquitted." *Brown*, 2010 WL 6121695, at *4. Under *Hill*, in order to show prejudice, petitioner need only have shown that he would not have pleaded guilty, not that he would have prevailed at trial. *See Hill*, 474 U.S. at 59; *see also Lafler v. Cooper*, 132 S. Ct. 1376, 1384-88 (2012) (fact that a petitioner was convicted at a fair trial did not defeat an ineffective assistance of counsel claim where the petitioner argued that the outcome of plea bargaining would have been different if he had received competent counsel). Nonetheless, the state court explicitly found that petitioner did not suffer any prejudice whatsoever, and that the plea deal was "an extremely

Petitioner identifies a number of alleged problems with Dolan's testimony, and argues that the habeas court should not have credited this testimony. But none of Judge Fuger's factual determinations were clearly wrong or unreasonable. First, it was reasonable for Judge Fuger to credit Dolan over petitioner with regard to the competing claims over what advice Dolan gave to petitioner regarding the effect of any appeal on the plea. *See* Doc. #11-9 at 49 (petitioner's testimony that Dolan told him he could withdraw his plea if he prevailed on his appeal); Doc #11-9 at 60-61 (Dolan's testimony that he made no such representations to petitioner). Judge Fuger's conclusion was based on a credibility determination, to which great deference is owed on review of a habeas petition under § 2254. Federal courts do not sit to second-guess the credibility determinations made by state court judges. Moreover, Dolan's account is supported in part by petitioner's statement at his plea canvass that he understood the judge when he explained that "you've already had a trial on the murder charge," and that "there's not going to be a retrial, based upon your plea of guilty." Doc. #11-8 at 3.

Petitioner's efforts to corroborate his account are otherwise unconvincing. He insisted in his habeas testimony and in his briefing before this Court that he promptly took steps to vindicate his rights by filing a habeas corpus petition even before the appeal of his assault conviction had been decided and as soon as he learned that success in his assault appeal would not allow him to withdraw his guilty plea. Doc. #11-9 at 52; Doc. #25 at 30. Although it is true that petitioner filed a habeas corpus petition in November 2006 while his assault appeal was still pending (but nearly a year after his guilty plea), this petition challenged his guilty plea on other grounds and did not allege any kind of misadvice by Dolan that would have prompted him not to enter a guilty plea. Doc. #31-1. In a supplemental filing, petitioner now claims that he filed *another*

---

favorable pretrial settlement." *Brown*, 2010 WL 6121695, at *4. It is clear from Judge Fuger's reasoning that he concluded that petitioner would have accepted the plea even if he had all the information regarding his ability to later withdraw it. I therefore find that any possible legal error was harmless.

petition in 2006 that fits with his story, but he has not produced this petition or otherwise explained why it has not been produced.

Nor did Judge Fuger unreasonably conclude that petitioner would have made the same decision to plead guilty even if he had believed that reversal of the assault conviction would allow him to withdraw his guilty plea. As Judge Fuger explained,

> By making the pragmatic decision to plead guilty, *even if he believed his assault case would later be reversed*, the petitioner voluntarily chose to forego his constitutional right to a trial on a murder charge in exchange for what is translated to a limitation upon his total exposure that allowed him to receive a more favorable sentence of not more than thirty years for everything.

*Brown*, 2010 WL 6121695 at *2 (emphasis added).

Despite the contrasting testimony of Dolan and petitioner, this factual determination was not unreasonable on the basis of the evidence before Judge Fuger. First, the evidence showed that the guilty plea to the murder charge significantly limited his exposure to a far more severe sentence. Indeed, apart from the murder charge, he faced more than 30 years imprisonment for just the assault and weapons charge for which the jury had returned a verdict of guilty. Second, Dolan testified about the concern that he and petitioner had that DNA testing on the hat found at the scene of the murder would link petitioner to that hat and hence to the scene of the murder. Dolan testified that "I had a discussion with Mr. Brown before the first trial," and "he told me that he had worn the hat." Doc. #11-9 at 21. Although Dolan later testified more equivocally about whether petitioner had "specifically [told] me he was wearing it, there was an understanding that his DNA would be in that hat." Doc. #11-9 at 40. According to Dolan, "I thought that the DNA connection made … the state's case very strong, and there was a likelihood of a conviction, great likelihood of conviction at a second trial." Doc. #11-9 at 23. Dolan thought that the state's plea offer was "an excellent offer based on the strength of the

11

state's case at that point against Mr. Brown at a second trial," and he shared that opinion with petitioner. Doc #11-9 at 30-31. The "overriding concern" for both Dolan and petitioner was "what would happen at a second trial" in terms of new DNA evidence. Doc. #11-9 at 31; *see Premo v. Moore*, 562 U.S. 115, 127 (2011) (denying habeas corpus relief where record showed that defendant's "prospects at trial were anything but certain" and that "with a potential capital charge lurking, [defendant's] counsel made a reasonable choice to opt for a quick plea bargain," or "at the very least, the state court would not have been unreasonable to so conclude").

Petitioner further argues that—apart from any malfeasance or nonfeasance of his counsel—his plea was not knowing and voluntary because he labored under a subjective misapprehension that success on his assault appeal would allow him to withdraw his guilty plea to murder. Again, however, this claim is not consistent with the plea colloquy in which petitioner said that he understood that there would not be a re-trial of the murder. Moreover, even if petitioner may have labored under some misapprehension about the consequences of his assault appeal, it was not unreasonable for the state court to conclude that this misapprehension would not have altered his decision to plead guilty. *See Brown*, 2010 WL 6121695 at *2. Again, Dolan testified that he believed and communicated to petitioner that the state's case was going to be stronger in the second trial. This testimony provided a sound basis to conclude that petitioner reasonably determined that he was better off taking the plea deal—regardless of whether or not he could withdraw it following a successful appeal. In sum, I cannot conclude that the state court made any unreasonable factual determinations at the habeas proceeding.

Petitioner also contends that the state habeas court unreasonably applied the law by failing "to consider *all* the relevant circumstances, as required under federal law." Doc. #25 at 39. He contends that if the court had done so, it would have considered "the complicated nature

of the prior criminal proceedings against petitioner" and reached a different conclusion. *See* Doc. #25 at 58. I do not agree. Petitioner received a full and fair evidentiary hearing before the state courts on his claim, and there is nothing to show that Judge Fuger did not consider all relevant circumstances.

Petitioner relies on *Nash v. Israel*, 533 F. Supp. 1378 (E.D. Wis. 1982), *aff'd,* 707 F.2d 298 (7th Cir. 1983). In *Nash*, a federal court held that a petitioner had suffered a violation of due process because he did not fully understand his plea agreement. The court in *Nash* suggested that when the circumstances surrounding a plea are "unusual," then "[a]ccepting such a plea requires a more careful than usual determination of what [the petitioner] knew and what he understood the consequences to be." *Nash*, 533 F. Supp. at 1384.

I conclude that *Nash* is easily distinguishable from this case. In *Nash*, as part of a plea agreement, the state promised to recommend commutation of a defendant's sentence to the governor. The court found that the defendant had not understood that the governor's ultimate decision on that question was entirely discretionary and unlikely to be granted, despite the fact that the offer to recommend commutation to the governor was an explicit and central part of the plea deal. Here, by contrast, no one ever told petitioner that he would be able to withdraw the plea if he won his appeal. He was not in any way misled as the defendant was in *Nash*.

## CONCLUSION

The Petition for Writ of Habeas Corpus is DENIED. Because petitioner has not made a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), no certificate of appealability shall enter. The Clerk is directed to enter judgment in favor of respondent and to close this case.

It is so ordered.

Dated at New Haven this 3rd day of August, 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge